IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | | |
|---|---|---|
| DEWITT ROSS & STEVENS S.C., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 4:13-cv-00071 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| ALVIN E. ECKENROD, ET AL. | ) | By: Hon. Jackson L. Kiser |
| | ) | Senior United States District Judge |
| Defendants. | ) | |

This matter is before the Court on Defendants Alvin E. Eckenrod and Interlam Corporation's Motion for Summary Judgment ("the Motion"). [ECF No. 32.] Defendant Modular Wood Systems, Inc., did not join in the Motion and, on Plaintiff's motion, Defendant Lab Designs, LLC, was dismissed from the case. (Order, Feb. 2, 2015 [ECF No. 43].) I have reviewed the evidence and argument of both parties, and the matter is now ripe for disposition. For the reasons stated herein, I will deny the Motion.

## I.   STATEMENT OF FACTS AND PROCEDURAL BACKGROUND

Because this matter is before the Court under Federal Rule of Civil Procedure 56, the facts are recited in the light most favorable to Plaintiff, the non-moving party. See Scott v. Harris, 550 U.S. 372, 380 (2007).

Plaintiff DeWitt, Ross & Stevens, S.C. ("Plaintiff" or "DeWitt"), is a Wisconsin-based law firm. Defendant Interlam Corp. ("Interlam") is a manufacturer of sculptured wall panels headquartered in Mt. Airy, NC. Defendant Modular Wood Systems, Inc. ("Modular") maintained its offices in Claudeville, VA, until its assets were sold to Panel Processing, Inc. in 2012. Defendant Alvin E. "Skip" Eckenrod ("Eckenrod") was President of Modular until October 2012. AEE Enterprises, Inc. ("AEE") is the successor corporate entity to that portion of

- 1 -

Modular which was not sold to Panel Processing, Inc. Lab Designs, LLC ("Lab Designs") is a distributor of high-end laminates, and its main office is in Las Vegas, NV.[1] Joseph Ervin and Eckenrod are Managers of Lab Design.[2] Eckenrod is currently the President of AEE and Interlam, and was formerly a Manager of Lab Design and President of Modular.

On June 27, 2003, Eckrenrod, the president of Interlam, engaged DeWitt's services as counsel in an intellectual property dispute. To that end, DeWitt and Eckenrod executed a standard engagement letter outlining the extent of DeWitt's obligations. (See Pl.'s Br. in Opp. Ex. A pg. 1-2, Jan. 20, 2015 [ECF No. 35-2] (hereinafter "Engagement Ltr.").) As is relevant to this dispute, the engagement letter stated, in part:

> This letter also confirms that you have engaged DeWitt Ross & Stevens S.C. to represent you with your intellectual property work.
> . . .
> For purposes of this letter, "we" and "us" refer to DeWitt Ross & Stevens S.C., and "you" and "your" refer to Skip Eckenrod and Interlam. The term "intellectual property" is specifically meant to incorporate patents, trademarks, copyrights, trade secrets and trade dress. However, this engagement letter will form the basis of our understanding for any other legal matters authorized by you.
> The scope of our legal services will be in accordance with this letter, any written modifications to it, and our discussions or correspondence not inconsistent with this letter or its written modifications.

(Id.) The letter was signed by Charles S. Sara, a DeWitt attorney, and Eckrenrod (listed on the Engagement Letter as "President"). (Id. pg. 9.) The engagement letter also stated, above Eckenrod's signature: "For Interlam Approved & Agreed." (Id.)

Beginning in 2003 and lasting throughout at least 2007, DeWitt represented Interlam on several different matters. In 2007, Interlam contacted DeWitt attorney Harry Van Camp

---

[1] Modular/AEE is not a party to Motion.

[2] On joint motion of the parties, the claims against Lab Designs were dismissed without prejudice. (See Order, Feb. 2, 2015 [ECF No. 43].)

regarding a federal lawsuit in Seattle, Washington. (Aff. of Harry Van Camp ¶ 4, Jan. 20, 2015 [ECF No. 35-4].) DeWitt attorney's represented Interlam through a three-day jury trial in February and March of 2008. (Id. ¶ 5.) A separate letter of engagement was not signed for that representation. According to Van Camp, "Interlam paid all of its legal fees associated with the Seattle litigation." (Id. ¶ 7.) During DeWitt's representation of Interlam on the Seattle litigation, Eckenrod and Eddie Bishop, Interlam's Vice President of Operations, were Interlam's primary contacts with DeWitt. (Id. ¶ 6.) Bishop also served as Modular's General Manager. (Aff. of Eddie Bishop ¶ 5, Aug. 29, 2014 [ECF No. 32-3].)

Several years later, in approximately May 2009, Marlite, Inc., sued America Canas, a Modular employee, in federal district court in Ohio. (Van Camp Aff. ¶ 8.) Marlite contended that Canas, a former Marlite employee, breached a non-complete agreement when she began working for Modular. (See id.) According to Van Camp, both Eckenrod and Bishop asked Van Camp to represent Canas in the Marlite litigation. (Id. ¶ 9.) "Both Bishop and Eckenrod indicated that Eckenrod, or one of the businesses entities that he controlled, would pay for Ms. Canas'[s] legal fees." (Id.) Van Camp states that, based on DeWitt's prior interactions with Eckenrod, he believed Eckenrod's request amounted to authorization based on the language in the 2003 engagement letter with Interlam. (Id.) Interlam was not a party to the Marlite litigation. (See, e.g., Aff. of Alvin Eckenrod ¶ 13, Aug. 29, 2014 [ECF No. 32-2].) The parties did not execute a letter of engagement for the Marlite litigation. (See id. ¶ 15–16.)

During the Marlite litigation, the case was transferred to the Southern District of Florida, and the complaint was amended to add claims against Modular and Eckenrod, in his individual capacity. (Van Camp. Aff. ¶ 10–11.) Eckenrod was added as a party because he had personally signed a non-compete agreement with Marlite. (Id. ¶ 11; id. Ex. A.) With Canas's consent, Van

- 3 -

Camp withdrew as counsel for Canas and began representing Modular and Eckenrod. (Id. ¶ 12.) There is no dispute that Van Camp and DeWitt represented Modular and Eckenrod in the Marlite litigation. (See, e.g., id. ¶ 13; Eckenrod Aff. ¶ 14.)

As the case progressed, bills for legal services in the Marlite litigation were sent monthly to Interlam. "Interlam initially paid DeWitt's bills for the legal services in the Marlite litigation." (Van Camp Aff. ¶ 12.) Prior to trial in the Marlite matter, however, "Interlam fell behind in payments." (Id. ¶ 17.) Van Camp states that Eckenrod and Bishop promised that all outstanding DeWitt bills would be paid prior to the trial, but that did not occur. (Id.) Nevertheless, Van Camp continued his representation of Eckenrod and Modular during a two-week trial on the Marlite matter. (Id. ¶ 18.) Van Camp asserts that, during the trial, Eckenrod and Bishop promised to pay DeWitt's fees for the representation (id. ¶ 19); Eckenrod denies that any such guarantee occurred (Eckenrod Aff. ¶¶ 20, 22–24). Rather, Eckenrod maintains Modular—and only Modular—agreed to pay DeWitt for representing Modular and Eckenrod in the Marlite litigation. (See id. ¶ 18.)

Van Camp asserts that Defendants paid DeWitt $15,000.00 per week pursuant to his and Eckenrod's agreement for the first six weeks. (Van Camp Aff. ¶ 20). At that point, Defendants claimed financial hardship and reduced their weekly payments to $5,000 from August 11, 2010, until November 17, 2010. (Id. ¶ 21). Despite Eckenrod's claims in his affidavit, Bishop did make payments to DeWitt for the Marlite litigation. (See id. ¶ 19.) For example, on August 23, 2010, Van Camp requested that Eckenrod "make the payment [he] promised." (Id. Ex. I.) Bishop responded via his "eddie@interlam-design.com" e-mail address:

> I am sending $5,000 today and will send another $5,000 during the course of this week. Next week I will start sending $10,000 every Monday. If this changes, I will notify you.

- 4 -

Case 4:13-cv-00071-JLK-RSB   Document 50   Filed 02/13/15   Page 4 of 11   Pageid#: 571

(Id.)  In January of 2011, the payments ceased.  DeWitt never received any further payments on its outstanding bills from the Marlite litigation.  (Id. ¶¶ 24, 27.)

On December 12, 2013, DeWitt brought suit in this Court against Defendants alleging breach of contract and "tortious conduct" (fraud).  (See Compl. ¶¶ 50–58 [ECF No. 1].)  The fraud count was dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6) (see Order, Nov. 24, 2014 [ECF No. 30]), and DeWitt chose not to amend its Complaint (see Ltr. from James C. Joyce, Jr., to Hon. Jackson L. Kiser, Dec. 8, 2014 [ECF No. 31]).  On January 6, 2015, Defendants Eckenrod, Interlam, and Lab Designs moved for summary judgment.  (See Mot. for Summ. J., Jan. 6, 2015 [ECF No. 32].)  DeWitt filed its brief in opposition to the Motion on January 20.  (Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J., Jan. 20, 2015 [ECF No. 35].)  Eckenrod, Interlam, and Lab Designs filed a reply on January 27.  (Reply. Mem. in Supp. of Defs.' Mot. for Summ. J., Jan. 27, 2015 [ECF No. 37].)  On January 30, DeWitt voluntarily dismissed its claims against Lab Designs pursuant to Federal Rule of Civil Procedure 41.  (See Stipulation, Jan. 30, 2015 [ECF No. 42]; Order, Feb. 2, 2015 [ECF No. 43].)  Thus, only Eckenrod and Interlam are movants on the Motion; Modular/AEE is not a party to the Motion.

## II.  STANDARD OF REVIEW

Summary judgment is appropriate where there is no genuine dispute of material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); George & Co. LLC v. Imagination Entertainment Ltd., 575 F.3d 383, 392 (4th Cir. 2009).  A genuine dispute of material fact exists "[w]here the record taken as a whole could…lead a rational trier of fact to find for the nonmoving party."  Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (internal quotation marks and citing reference omitted); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine dispute cannot be created where there is only a scintilla of evidence favoring

the nonmovant; rather, the Court must look to the quantum of proof applicable to the claim to determine whether a genuine dispute exists. Scott v. Harris, 550 U.S. 372, 380 (2007); Anderson, 477 U.S. at 249−50, 254. A fact is material where it might affect the outcome of the case in light of the controlling law. Anderson, 477 U.S. at 248. On a motion for summary judgment, the facts are taken in the light most favorable to the non-moving party insofar as there is a genuine dispute about those facts. Scott, 550 U.S. at 380. At this stage, however, the Court's role is not to weigh the evidence, but simply to determine whether a genuine dispute exists making it appropriate for the case to proceed to trial. Anderson, 477 U.S. at 249. It has been noted that "summary judgment is particularly appropriate . . . [w]here the unresolved issues are primarily legal rather than factual" in nature. Koehn v. Indian Hills Cmty. Coll., 371 F.3d 394, 396 (8th Cir. 2004).

### III. DISCUSSION

Because the issues are different concerning each defendant, the defendants will be addressed in turn.

A. Modular Wood Systems, Inc.

Modular is not a party to the Motion, and therefore summary judgment is not appropriate on the claims against Modular. In its response in opposition, DeWitt asks that partial summary judgment be entered against Modular because, in their motion for summary judgment, Eckenrod and Interlam conceded that Modular is responsible for DeWitt's fees. This is inappropriate because: (1) DeWitt has never moved for summary judgment against Modular or any other defendant; and (2) Modular has not filed a pleading in which it concedes its liability for DeWitt's outstanding fees.

B. Interlam Corporation

Both parties rely on Virginia law in their respective briefs, so the parties apparently concede that Virginia law applies.[3]

Under Virginia law, a contract is "[a]n agreement between two or more persons which creates an obligation to do or not do a particular thing." Buchanan v. Doe, 246 Va. 67, 72 (1993) (quoting Black's Law Dictionary 322 (6th ed. 1990)). When there is doubt regarding the meaning of terms of a contract, "the conduct of the parties under the contract may furnish the proper interpretation. The interpretation of the parties is entitled to great weight." Va. Model Jury Instructions—Civil, No. 45.330 (2013). The elements of a breach of contract are: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of that obligation." Filak v. George, 267 Va. 612, 619 (2004).

At this stage, the only dispute (concerning Interlam) appears to be whether Interlam is bound by the 2003 engagement letter to pay DeWitt's fees in the Marlite litigation. There is no dispute that DeWitt has been injured by someone's refusal to pay its fees.

The 2003 engagement letter states, in relevant part:

> This letters also confirms that you have engaged DeWitt Ross & Stevens S.C. to represent you with your intellectual property work. . . . This letter outlines the terms under which DeWitt Ross & Stevens S.C. would be willing to represent you. If you accept out proposal, it will form the basis of our business relationship for the provisions of services by our firm.
> For purpose of this letter, "we" and "us" refer to DeWitt Ross & Stevens S.C., and "you" and "your" refer to Skip Eckenrod and Interlam. The term "intellectual property" is specifically meant to incorporate patents, trademarks, copyrights, trade secrets and trade

---

[3] It is unclear that this is the case. DeWitt is a Wisconsin law firm, the Marlite litigation occurred in Florida, Eckenrod is a North Carolina resident, and the defendant companies are all headquartered in Virginia, though Modular and Interlam are incorporated in Florida, while Lab Designs is incorporated in Nevada. None of the parties have put forth any facts to suggest that any portion of the alleged contract formation occurred in Virginia. Nevertheless, both parties rely on Virginia law, so a choice of law analysis seems unnecessary.

- 7 -

Case 4:13-cv-00071-JLK-RSB   Document 50   Filed 02/13/15   Page 7 of 11   Pageid#: 574

> dress. ***However, this engagement letter will form the basis of our understanding for any other legal matters authorized by you***.
> The scope of our legal services will be in accordance with this letter, any written modifications to it, and our discussions or correspondence not inconsistent with this letter or its written modifications.

(Engagement Ltr. pgs. 1–2 (emphasis added).) The letter is a binding contract between DeWitt and Interlam; the parties do not dispute this. Interlam only disputes that the terms of the agreement reach the present circumstances.

Taking the facts in the light most favorable to the non-moving party, the engagement letter binds Interlam to pay DeWitt's fees in the Marlite litigation. In addition to Interlam's intellectual property issue, the agreement states that it will also govern "any other legal matter authorized by you." "You" is defined as Skip Eckenrod. According to Harry Van Camp, Eckenrod authorized DeWitt to represent Modular and Eckenrod in the Marlite litigation. (See Van Camp. Aff. ¶¶ 9, 13.) There is evidence to establish that it was customary for the parties to communicate via telephone or e-mail when authorizing DeWitt to perform legal services outside of the original 2003 engagement letter, and that DeWitt understood such communiqués to be proper authorization to perform legal services on Interlam's behalf. (See, e.g., Aff. of Charles Sara ¶¶ 4–5, Jan. 20, 2015 [ECF No. 35-2]; Fieschko Aff. ¶ 4–6.) After such informal authorizations on other matters, Interlam routinely paid DeWitt's fees for the representation. Under this view of the facts Interlam, by and through its president Eckenrod, authorized DeWitt to represent Modular and Eckenrod under the terms of the 2003 engagement letter, and therefore summary judgment would not be appropriate as to Interlam.[4]

---

[4] Interlam contends that, because it was not a party to the Marlite litigation, it should not be required to pay Modular and Eckenrod's legal fees. Likewise, Interlam argues that, because neither Modular nor Eckenrod (personally) was mentioned in the 2003 engagement letter, it should not be required to pay their legal fees. In essence, if Eckenrod gave his authorization as Interlam's president, Interlam seeks to avoid the contract because it made a bad deal. A contract is enforceable regardless of whether the parties, in

- 8 -

Case 4:13-cv-00071-JLK-RSB   Document 50   Filed 02/13/15   Page 8 of 11   Pageid#: 575

Alternatively, the facts adduced by DeWitt could lead one to conclude that Eckenrod's authorization was in his role as president of Modular, not as president of Interlam or as an individual.[5] Such an agreement would not bind Interlam to pay DeWitt's bills, as Interlam would no longer be party to any agreement. Under that interpretation of the facts, Interlam would be entitled to summary judgment on DeWitt's claims.

Because the facts are open to two different interpretations that lead to separate legal conclusions regarding liability, there is a material factual dispute. For this reason, summary judgment is not appropriate on DeWitt's claims against Interlam. A jury must sort out the degree to which Eckenrod gave his consent as president of Interlam.

C. Alvin E. "Skip" Eckenrod

DeWitt contends that Eckenrod is bound by the terms of the 2003 engagement letter because he was a signatory on the letter. This argument is without merit. The letter clearly stated that Eckenrod signed the letter as "president," and that the letter was "[a]pproved" and "[a]greed" "[f]or Interlam." (Engagement Ltr. pg. 9.) DeWitt has not offered any evidence whatsoever to show that Eckenrod agreed to be bound personally by the engagement letter; in fact, DeWitt concedes that Eckenrod signed the engagement letter "as president of Interlam." (Pl.'s Stmt. of Undisputed Facts ¶ 4 [ECF No. 35-6].) In the absence of any evidence to

---

hindsight, *want* to be bound by their agreement. Assuming DeWitt can prove that Eckenrod authorized the representation, Interlam is liable for the acts of its agent acting under actual or apparent authority. Eckenrod clearly has the authority to bind Interlam contractually; Interlam cannot avoid its contractual obligations simply because Eckenrod obligated them to pay the legal expenses for a case in which it did not have an apparent interest. See, e.g., Terminal Road Assocs. v. Hall, 32 Va. Cir. 64, 1993 WL 946234, at *1 (1993) (noting that a president has apparent authority to bind his organization in contract).

[5] See infra pgs. 8–9 for a discussion on whether the 2003 engagement letter serves to bind Eckenrod personally.

establish that Eckenrod signed the engagement letter in his personal capacity, there is no basis to conclude that the contract binds Eckenrod personally.

In its brief in opposition to the motion for summary judgment, DeWitt argued, "Eckenrod is liable for the unpaid legal fees in the Marlite litigation because he consented to Mr. Van Camp representing him personally in the litigation." (Pl.'s Br. in Opp. to Defs.' Mot. for Summ. J. pg. 11, Jan. 20, 2015 [ECF No. 35].) Although Plaintiff does not cite any law of make an explicit argument to this point, under Virginia law, "[t]o avoid unjust enrichment, equity will effect a 'contract implied in law,' requiring one who accepts and receives the services of another to make reasonable compensation for those services." Po River Water & Sewer Co. v. Indian Acres Club of Thornburg, Inc., 255 Va. 108, 114 (1998). "The liability to pay for the services is based on an implication of law that arises from the facts and circumstances presented, independent of agreement or presumed intention. The promise to pay is implied from the consideration received." Id. at 114–15 (citing Marine Dev. Corp. v. Rodak, 225 Va. 137, 142 (1983); Kendrickson v. Meredith, 161 Va. 193, 200–01 (1933)). Under this theory, Eckenrod is liable for the "implied contract" to pay the reasonable value of DeWitt's services to him. He accepted DeWitt's services, as indicated by his acquiescence to representations that DeWitt was his attorney. Under the applicable law, he would be obligated to pay for the reasonable value of those services. Therefore, summary judgment should be denied.

In regards to Eckenrod, a fact finder must determine: (1) whether Eckenrod consented to DeWitt's representation of him personally such that the law would imply a contract for the fair value of DeWitt's services to him; (2) whether Eckenrod's consent was given as an individual or as an officer of one of the company defendants; or (3) whether Eckenrod did not consent to pay DeWitt, in which case DeWitt has no recourse against Eckenrod for its flawed assumptions

- 10 -

regarding who would pay its bills. Because there are disputes of material facts regarding Eckenrod's liability, summary judgment is not appropriate on DeWitt's claims.

## IV. CONCLUSION

The express terms of the 2003 engagement letter between DeWitt and Interlam will bind Interlam to pay DeWitt's fees in the Marlite litigation if Eckenrod's authorization was made as President of Interlam. As such, summary judgment is not appropriate. Likewise, Eckenrod will be liable to pay the share of DeWitt's fees for his personal representation if he personally consented to DeWitt's representation of him in the Marlite litigation. I will not grant summary judgment on to the claims against Eckenrod.

The primary issue in this case is sorting out which of his many hats Eckenrod was wearing at any given point in time. Eckenrod cannot rely on his self-serving protestations that he was only acting in whatever manner excuses him and his companies from liability for DeWitt's fees to secure judgment on the claims against Defendants. A jury is required to sort out the truth behind Eckenrod's different roles. It is not appropriate for this Court to do so on a motion for summary judgment.

The Clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

Entered this 13th day of February, 2015.

s/Jackson L. Kiser
SENIOR UNITED STATES DISTRICT JUDGE